**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **SANTI ALI JOHNSON,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )   **Case No. 4:17-CV-1953 PLC** |
| | ) |
| **BILL STRANGE and** | ) |
| **ERIC SCHMITT,[1]** | ) |
| | ) |
| **Respondents.** | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the pro se petition of Missouri state prisoner Santi Ali Johnson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [ECF No. 1]  Petitioner is incarcerated at the Southeastern Correction Center, pursuant to the judgment of the Circuit Court of the City of St. Louis.  On March 10, 2010, a jury found Petitioner guilty of one count of forcible rape, three counts of forcible sodomy, one count of second-degree robbery, and one count of kidnapping.  Respondents Bill Strange and Eric Schmitt filed a response to the petition, along with exhibits consisting of copies of the materials from the underlying state court proceedings.  [ECF

---

[1] The Court substitutes as the Respondent Bill Strange, the present warden of the Southeast Correctional Center ("SECC") where Petitioner is incarcerated, in lieu of the former warden of the SECC who was named as a respondent at the time Petitioner filed his habeas proceeding.  Fed. R. Civ. P. 25(d).

Additionally, because Petitioner is subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding, the Court adds as a named Respondent Eric Schmitt, the Attorney General of the State of Missouri. See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

Nos. 18 & 21]  For the reasons set forth below, the Court denies the petition, as well as Petitioner's

request for an evidentiary hearing. [2]

## I.  Background

The Circuit Court for the City of St. Louis held a jury trial in March 2010.  On March 8,

2010, during pre-trial proceedings, Petitioner moved for the trial judge to recuse himself.

Petitioner's counsel stated:

> After learning that you do live close or at least in the vicinity of where the alleged
> events happened … I would ask at this time that you recuse yourself as I do not
> believe that a reasonable person would be able to remove themselves from the
> facts especially when it concerns possibly their own neighborhood.

[ECF No. 18-1 at 14]  The trial court denied the motion for recusal.  On the morning of trial,

Petitioner also moved to continue the case, withdraw counsel, and proceed with a private attorney.[3]

[See id. at 524-25]  The trial court denied the motion.

At trial, the State presented the testimony of the victim, A.A.  She testified that, on January

3, 2009, at approximately 5:15 a.m., she went outside and started her car, which was parked on the

street, to allow it time to warm up before she drove to work.  A.A. stated that, after she started and

locked the car, Petitioner grabbed her by the shoulders, demanded her money, and forced her to

the ground.  Petitioner sat on A.A.'s back, removed her phone from her pocket, and penetrated her

vagina with his fingers.  A.A. testified that, when she struggled to escape, Petitioner "put his hands

around [her] throat and squeezed the air out of [her]."  [ECF No. 18-1 at 276]  Petitioner then

pulled A.A. into a dark "aisle" between two buildings, and put his penis in A.A.'s vagina, mouth,

---

[2] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge
pursuant to 28 U.S.C. § 636(c).  [ECF No. 7]

[3] Although there is no contemporaneous transcript of Petitioner's oral motion to continue the case,
withdraw counsel, and proceed with private counsel, Petitioner, the trial court, and the prosecutor
discussed the motion on the record at the sentencing hearing.

and anus.  [Id. at 277]  Petitioner threatened that "he would fuck [her] up if [she] called the police."  [Id. at 278]  Before walking away, Petitioner took A.A.'s cell phone, wallet, and purse, which contained a camera, calculator, and tripod.  [Id. at 282, 296]

A.A. testified that she returned to her apartment and contacted her boyfriend, who immediately drove to A.A.'s apartment.  A.A. and her boyfriend each testified that they were looking out the window at A.A.'s car, which was still running, when they observed Petitioner return, wearing different clothes, and try unsuccessfully to open the car door.  When A.A. knocked on the window, Petitioner "looked up in the direction where the knock came from…. made the gesture like, oops, I'm sorry," and walked away.  [Id. at 286-87]   A.A. then called the police and reported the incident as a robbery.

A.A. testified that, after talking to police, she went to the hospital where she underwent a sexual assault examination.  A.A. stated that, two days later, she met with Detective Dana Pickett at police headquarters, and brought with her two sketches she made of "the guy who raped [her]."  [Id. at 289]  A.A. stated that she had also provided Det. Dana Pickett with cell phone records, which reflected that her phone was used after it was taken from her.  A.A. identified the cell phone records that she emailed to the police.  Trial counsel objected on the grounds that "these records are hearsay," and the trial court overruled the objection.  [Id. at 292-93]  A.A. also helped an artist complete a composite, which A.A. described as "very accurate," and Detective Richard Noble later testified  was "a drawn portrait" of Petitioner.  [Id. at 290, 408]

Sexual assault examiner, Kathryn Howard, RN, testified that she examined and interviewed A.A. at the hospital on January 3, 2009.  Nurse Howard stated that A.A. was anxious and tearful during the interview, and her injuries included abrasions and swelling on her hands and an abrasion or tear near her vaginal opening.  Nurse Howard completed a sexual assault kit, which contained

A.A.'s clothes, including her pants that were stained, and swabs from A.A.'s mouth, vagina, anus, and breasts.

Det. Pickett testified that she met with A.A. after the assault, and A.A. provided her with two sketches of Petitioner and "copies of cellular phone records from her cell phone," which reflected calls made after the phone was taken.  [Id. at 368]  Det. Pickett identified an email A.A. sent her with "all the phone activity on the cell phone," and the prosecutor moved to admit the phone records into evidence. [Id. at 370-71]  The trial court admitted the records over trial counsel's objection that "these phone records are phone company records and we haven't heard from anyone from the phone company."  [Id.]

Detectives Pickett, Noble, and Jason Steurer testified that, when they researched the numbers from A.A.'s cell phone records, Petitioner and his girlfriend Rachel Robinson became "persons of interest."  [Id. at 371, 406]  Det. Noble arrested Petitioner on January 8, 2009, and A.A. identified him in a live line-up the same day.

Dets. Pickett and Amy Parker-Stayton testified that, after Petitioner's arrest, they searched Ms. Robinson's car and found A.A.'s camera, wallet, and purse, as well as the calculator and tripod that were in A.A.'s purse when it was stolen.  Det. Pickett testified that Ms. Robinson "actually took me to [Petitioner's] aunt's house," where they recovered A.A.'s camera.  [Id. at 374]

Finally, the State presented evidence relating to the sexual assault kit.  A crime lab biological screener, who conducted presumptive tests for seminal fluid, testified that the vaginal swabs, rectal swabs, and fabric from A.A.'s pants "presumptively tested positive" for seminal fluid.  [Id. at 420-24]  A forensic scientist analyzed those items for DNA evidence and testified that she found Petitioner's DNA on A.A.'s pants, but not on the vaginal or rectal swabs.

Petitioner testified in his own defense.  According to Petitioner, he approached A.A. on the street and "[s]omehow I think we started talking about sex."  [Id. at 445]  A.A. told Petitioner "she always had a fetish of being with" a Black man, and they proceeded to have oral and anal sex.  [Id. at 446]  Petitioner stated that, when A.A. refused to have vaginal sex with him, he "kind of got upset" and "decided … why don't I just take her purse…."  [Id. at 447-48]  Petitioner testified that he took "[t]he purse, the wallet, a camera … the calculator…."  [Id. at 450]  Petitioner added that he "took a cell phone, too" and used it to call "several people."  [Id. at 451]  On cross-examination, Petitioner affirmed that he threw away the sweatshirt he was wearing and returned to A.A.'s apartment and "tried to open her car door and steal more stuff out of her car[.]"  [Id. at 460]

The jury found Petitioner guilty on all counts, and Petitioner filed a motion for judgment of acquittal or a new trial, which the trial court denied.  At the sentencing hearing in April 2010, the court found Petitioner was a prior and persistent offender and sentenced him to four, concurrent thirty-year sentences for the counts of forcible rape and forcible sodomy to run consecutively with two concurrent fifteen-year sentences for the robbery and kidnapping counts, for a total sentence of forty-five years' imprisonment.

Petitioner appealed the conviction to the Missouri Court of Appeals, arguing that the trial court erred in:  (1) denying Petitioner's motion to continue his case, withdraw counsel, and proceed with a private attorney; (2) allowing A.A. and Det. Pickett to testify about A.A.'s phone records and entering the "unauthenticated phone records" into evidence; and (3) denying Petitioner's motion for recusal based on the judge "living within blocks from where the alleged events happened."  [ECF No. 18-3 at 16-18]  The Missouri Court of Appeals for the Eastern District affirmed the conviction in an unpublished per curiam order accompanied by a memorandum sent

to the parties setting forth the reasons for the order.  State v Johnson, No. ED 94787, 342 S.W.3d 366 (Mo. App. 2011), [ECF No. 18-5]

Petitioner subsequently filed a post-conviction motion under Missouri Supreme Court Rule 29.15, which the motion court denied without an evidentiary hearing, and Petitioner appealed the decision to Missouri Court of Appeals.  On appeal, Petitioner argued that the motion court erred in denying his claims that:  (1) trial counsel was ineffective for failing to cross-examine Nurse Howard about the condition of A.A.'s clothes, face, and neck upon her arrival at the hospital; (2) appellate counsel was ineffective for failing to appeal the sufficiency of the evidence to support the kidnapping conviction; and (3) trial counsel was ineffective for asking A.A. questions on cross-examination that "were inconsistent with the defense strategy of arguing consent[.]"  [ECF No. 18-6 at 13-15]  The Court of Appeals affirmed the motion court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties only setting forth the reasons for the order.  Johnson v. State, No. ED 104034, 514 S.W.3d 646 (Mo. App. 2017), [ECF No. 18-9]

## II.  Grounds Raised

In his § 2254 petition for writ of habeas corpus, Petitioner raises six grounds for relief:

(1) The trial court erred in denying Petitioner's motion to continue the case, withdraw counsel, and proceed with a private attorney;

(2) The trial court abused its discretion in allowing A.A. and Det. Picket to testify about A.A.'s cell phone records, and admitting the cell phone records into evidence, over Petitioners' objections;

(3)  The trial court abused its discretion in denying Petitioner's motion for recusal based on the fact that the judge lived in the neighborhood where the crime occurred;

(4) Petitioner received ineffective assistance of counsel because his trial counsel failed to question the State's witness Kathryn Howard, RN, about A.A.'s physical condition and the condition of A.A.'s clothes when Ms. Howard examined her at the hospital;

(5) Petitioner received ineffective assistance of appellate counsel because appellate counsel failed to appeal the sufficiency of the evidence to support the kidnapping conviction; and

(6) Petitioner received ineffective assistance of counsel because trial counsel's attempt to impeach A.A. on cross-examination "only served to diminish Petitioner's believability."

[ECF No. 1]

Respondents argue that Grounds One and Two are procedurally barred.   [No. 18] Respondents further assert that the Missouri Court of Appeals considered all six grounds on their merits and its decisions are not contrary to or an unreasonable application of clearly established federal law, are entitled to deference, and are supported by the record.

## III.  Discussion

### A.  Procedurally-defaulted claims

Respondents assert that Petitioner procedurally defaulted his Grounds One and Two. Before seeking federal relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must fairly present the federal claim in each appropriate state court.  28 U.S.C. § 2254(b)(1); Nash v. Russell, 807 F.3d 892, 898 (8th Cir. 2015) (citing Baldwin v. Reese, 541 U.S. 27, 29 (2004)).  "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition."  Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).

Generally, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court.  Sawyer v. Whitley, 505 U.S. 333, 338 (1992).  Where a petitioner procedurally defaulted his federal claims in state court, "federal habeas review of the claims is barred unless the

prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Murphy v. King, 652 F.3d 845, 849 (8th Cir. 2011) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him," such as a showing that the factual or legal basis for a claim was not reasonably available or that some interference by officials made compliance with the procedural rule impracticable.  Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir. 1991) (alterations and emphasis in original) (quoting Coleman, 501 U.S. at 753).  To invoke the fundamental miscarriage of justice exception to the procedural default rule, a petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

1.    Ground One:  Trial Court Error – Denial of Motion to Continue and Withdraw Counsel

In Ground One, Petitioner claims the trial court erred in denying his motion to continue the case, withdraw counsel, and proceed with a private attorney "because the requests were reasonable under the circumstances."  [ECF No. 1]  Respondents counter that, because Petitioner did not raise the issue in his motion for new trial, and the Missouri Court of Appeals reviewed it only for plain error, the issue is procedurally defaulted.  [ECF No. 18]  Respondents further argue that "[f]ederal court review of the claim is barred" because Petitioner does not allege or show good cause or actual prejudice required to overcome the default.  [Id. at 3]

In this case, there was "no contemporaneous record of [Petitioner's] request for a continuance to obtain new counsel before trial."  [ECF No. 18-5]  However, after sentencing, when the trial court inquired about the effectiveness of Petitioner's trial counsel, Petitioner complained

8

that he had wanted to retain attorney Robert Taaffe, but the trial court had denied the request.  [Id.]

The prosecutor recalled that, on the morning of trial, before a different judge, "Mr. Taaffe sought

to enter and asked for a continuance.  The continuance was denied, so Mr. Taaffe did not enter."

[Id. at 5]  The court responded that it remembered the request and recounted on the record:

> I think I even made the call.  I think we sent it back to [Division] 16 for
> [Division] 16 to make a ruling on it, and I think Mr. Taaffe would have been
> allowed to enter had he been ready to try that case that day.  It wasn't that we
> were keeping Mr. Taaffe from being your lawyer.  It was just that since he didn't
> get hired until the eve of trial, he couldn't possibly be prepared to try your case
> adequately in the next morning.  And the case had been over a year old, and the
> victim had been waiting for over a year to have the case come to a resolution.
> So I think that was the reason Mr. Taaffe was denied….

[Id.]  Petitioner did not raise the issue in his motion for new trial.  [ECF No. 18-2]

On appeal, Petitioner conceded that the claim of error was not preserved but argued that

the "denial of right to counsel of choice is structural error," which "def[ied] analysis by 'harmless-

error' standards."  [ECF No. 18-3 at 21 (citing United States v. Gonzalez-Lopez, 548 U.S. 140,

150 (2006)]  In the supplemental memorandum provided to the parties, the Missouri Court of

Appeals noted that the Supreme Court recognized "a trial court's wide latitude in balancing the

right to counsel of choice against the needs of fairness and against the demands of its calendar."

[ECF No. 18-5 at 6  (quoting Gonzalez-Lopez, 548 U.S. at 152) (internal citations omitted)]  The

court determined that "the denial of the continuance in these circumstances was not structural

error" because "the right to counsel of choice is subject to the public's right to the efficient

administration of justice[.]"  [Id.]   The court further held that "there are no extraordinary

circumstances in this case to justify reviewing this argument as a matter of plain error."[4]  [Id. at 7]

---

[4] The Court of Appeals likewise rejected Petitioner's alternative argument that it should remand
the case for an evidentiary hearing "in order to create a record on when and how defendant
requested a continuance, and on the ruling judge's reasoning for denying defendant's request,
because there was no transcript of the request."  [ECF No. 18-5 at 7]  The court reasoned that

The Eighth Circuit Court of Appeals has held that a state court's discretionary plain-error review of unpreserved claims cannot excuse a procedural default.  Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015).  Petitioner Ground One is procedurally defaulted.  Therefore, Petitioner must demonstrate cause and prejudice for failure to properly present this claim to the Missouri courts.  Coleman, 501 U.S. 750.  As Petitioner neither suggested that cause excused the procedural default nor argued a fundamental miscarriage of justice occurred, Petitioner's Ground One is denied.

2.   Ground Two:  Trial Court Error – Admission of Evidence Relating to Cell Phone Records

In Ground 2, Petitioner claims the trial court abused its discretion "in permitting the State, over Petitioner's objection, to allow [A.A.] and [Det.] Pickett to testify about [A.A.'s] cell phone records and enter the phone records into evidence[.]"  [ECF No. 1 at 6]   More specifically, Petitioner claims that the cell phone records "lacked a proper foundation, were hearsay, and were not admissible under any exception to the hearsay rule."  [Id. at 7]  Respondents counter that Petitioner's procedural default precludes review.  [ECF No. 18]  In the alternative, they assert that questions relating to "state evidence law are not cognizable grounds for relief in federal habeas litigation.  Estelle v. McGuire, 502 U.S. 62 (1991)."  [Id. at 3]

In his motion for new trial, Petitioner alleged that the trial court erred when (1) "it overruled and denied [Petitioner's] hearsay objection to the admission of the phone records during [A.A.'s] testimony" and (2) "when it overruled and denied [Petitioner's] foundation objection to the phone records during [Det.] Pickett's testimony."  [ECF No. 18-2 at 82-83]  The trial court denied the

Petitioner was not entitled to remand to create a record "because he has not shown that the absence of a record was caused by anyone other than himself or his counsel."  [Id.]  More specifically, Petitioner did not:  file a written motion for continuance; request that the proceedings on the motion be transcribed; memorialize the request for continuance and the denial in the transcribed hearing on the morning of trial; or raise the denial of his request in the motion for new trial.  [Id.]

motion, and Petitioner appealed to the Missouri Court of Appeals.  Petitioner presented the following point relied on in his appellate brief:

> The trial court abused its discretion in permitting the State, over Appellant's objection, to allow A.A. and Detective Pickett [to] testify about A.A.'s phone records and enter into evidence unauthenticated phone records as State's Exhibit 22 because the phone records lacked proper foundation since no custodial or other qualified person testified to the source of its details or whether it was collected in the regular course of business.  By allowing A.A.'s and Detective Pickett's testimony and admitting the phone records, [Petitioner] was deprived of his rights to due process and to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.  This evidence was hearsay in that it was knowledge acquired from a non[-]testifying witness or source offered to prove the truth of the matter asserted, and it was not admissible under any hearsay rule.

[ECF No. 18-3 at 18]

On review, the Missouri Court of Appeals found that the point relied on was defective and preserved nothing for review "because it groups three separate errors in one point (the admissibility of the testimony of two witnesses and the admissibility of one exhibit) and assigns two separate reasons for those three errors (lack of foundation and hearsay)."  [ECF No. 18-5 at 8 (citing State v. Garrison, 276 S.W.3d 372, 378 n. 4 (Mo. App. 2009))]  "Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of [Missouri Supreme Court] Rule 84.04,[5] made applicable to briefs in criminal appeals by [Missouri Supreme Court] Rule

---

[5] In regard to points relied on, Missouri Supreme Court Rule 84.04 provides:

> (1) Where the appellate court reviews the decision of a trial court, each point shall:
>     (A) identify the trial court ruling or action that the appellant challenges;
>     (B) state concisely the legal reasons for the appellant's claim of reversible error; and
>     (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

30.06(c)." State v. Leonard, 490 S.W.3d 730, 736 (Mo. App. 2016) (quoting Garrison, 276 S.W.3d at 378 n. 4).  "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal."  Id. (quoting Garrison, 276 S.W.3d at 378 n. 4).

The Missouri Court of Appeals nevertheless considered Petitioner's claims of error separately.  In regard to Det. Pickett's testimony, the court found that Petitioner failed to preserve the issue because he neither objected to Det. Pickett's testimony about the phone records nor raised the issue in his motion for new trial, and the Court found "no basis for plain error review."  [Id. at 9]  The court then found that Petitioner failed to demonstrate that he was prejudiced by either A.A.'s testimony about the phone records or the admission of the phone records into evidence because Petitioner testified that he took and used A.A.'s cell phone.

Next, the court held that Petitioner failed to show he was prejudiced by A.A.'s testimony that the cell phone records showed calls were after the phone was taken because Petitioner testified that he took A.A.'s cell phone and used it to make calls.  [Id. at 9-10]  Likewise, admission of the cell phone records themselves was not prejudicial because there was no dispute that Petitioner took and used A.A.'s cell phone.  [Id. at 11]

As previously discussed, a federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error."  Clark, 780 F.3d at 874.  Instead, this Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional

---

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error* ], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error* ]."

Missouri Supreme Court Rule 84.04(d)(1).

violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the court were not to address the claim.  Coleman, 501 U.S. at 750.

Petitioner provided no cause for his failure to present the issues raised in Ground Two in accordance with Missouri Supreme Court Rule 84.04.  If a prisoner fails to demonstrate cause, the court need not address prejudice.  Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).  Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.

Furthermore, even if this claim were not procedurally defaulted, Petitioner would not be entitled to relief because it involves a non-cognizable issue of state evidentiary law.  See 28 U.S.C. § 2254; Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[A] federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the  constitution or laws or treaties of the United States … federal habeas relief does not lie for errors of state law.").  Apart from exceptions such as the Confrontation Clause, state evidentiary issues only assume constitutional significance where the introduction or exclusion of evidence is so extremely unfair that its admission violates "fundamental conceptions of justice."  See Dowling v. United States, 493 U.S. 342 (1990).  The Supreme Court has defined this class of evidentiary issues "very narrowly."  Id. The Eighth Circuit has further opined that, to constitute a due process violation, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered [the] entire trial fundamentally unfair."  Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

The admission of the cell phone records and related testimony did not rise to the level of egregiousness, and it did not fatally infect the proceedings or render the entire trial fundamentally unfair.  The Missouri Court of Appeals considered this claim on direct appeal and held that, because "there was no dispute that [Petitioner] took and used the victim's cell phone," "evidence

that calls were made after the cell phone was taken was not outcome-determinative and any error in the admission of the cell phone records was not prejudicial."  [ECF No. 18-5 at 11]

This explanation is entitled to deference and does not incorrectly or unreasonably apply federal constitutional law.  Petitioner is not entitled to relief on this ground because it concerns a non-cognizable issue of state evidentiary law, and to the extent that it even implicates the Due Process Clause, the state courts adjudicated it in a manner consistent with 28 U.S.C. § 2254(d).  See e.g., Nelson v. Payne, No. 4:18-CV-994 JAR, 2021 WL 1392191, at *7, 12 (E.D. Mo. Apr. 13, 2021).  Consequently, Ground Two is denied.

B.  Claims addressed on the merits

1.  Standard for habeas review

A prisoner in custody under the judgment and sentence of a state court may only seek habeas relief on the ground that his custody violates the United States Constitution, laws, or treaties.  28 U.S.C. § 2254(a); see also 28 U.S.C. §§ 2241(c)(3), 2241(d).  When considering a state prisoner's habeas petition, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), see 28 U.S.C. § 2254(d), to exercise "only limited and deferential review of underlying state court decisions."  Nash, 807 F.3d at 897 (internal quotation marks omitted) (quoting Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011)).  A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication of the merits of a claim resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or ... decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000) ("Taylor"). If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'"  Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case[.]" Taylor, 529 U.S. at 407-08; see also id. at 413.

"Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir. 2004)).  Under the AEDPA, "a determination of a factual issue made by a [s]tate court shall be presumed to be correct" unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to a state court's factual determinations at either the trial or appellate level.  Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc).  The presumption also applies to a state court's implicit findings of fact.  Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Likewise, federal habeas courts defer to state court credibility determinations.  Smulls, 535 F.3d at 864.

2.   Ground Three:  Trial Court Error – Motion for Recusal

In Ground Three, Petitioner argues the trial court erred in denying his motion for recusal "based on the fact that the [j]udge lived in the neighborhood where the crime took place, and the fact that the [j]udge would not be able to be impartial when the crime took place in his own neighborhood." [ECF No. 1 at 8]  Petitioner further asserts that denial of his motion "was very prejudicial to the Petitioner because the [j]udge was truly partial and had an interest in this case." [Id.]  In response, Respondents assert that Petitioner's "allegations fail to state a claim" because Petitioner "presents no facts from which to conclude that the trial judge was biased."  [ECF No. 18 at 4]  Alternatively, Respondents maintain that the "state court's determination that the claim was meritless is reasonable and should receive deference under 18 U.S.C. § 2254(d)."  [Id.]

The record reflects that, before the venire panel was seated, Petitioner's trial counsel moved for the judge's recusal, and the court denied the motion.  On appeal, Petitioner alleged that the trial judge's failure to recuse himself violated Petitioner's "constitutional rights to due process of law, to present a defense, to access to the courts, and to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United State Constitution[.]"  [ECF No. 18-3 at 30]

"There is no question that the law on judicial bias is clearly established: a criminal defendant is constitutionally required to be tried before an impartial judge, and the likelihood or appearance of bias, even in the absence of actual bias, may prevent a defendant from receiving a fair trial."  Kinder v. Bowersox, 272 F.3d 532, 540 (8th Cir. 2001).  "Although clearly established, this standard is inherently vague."  Jones, 359 F.3d at 1012 (citing In re Murchison, 349 U.S. 133, 136 (1955)).  "Application of this vague standard, when viewed through the deferential lens of Williams v. Taylor and the AEDPA, necessarily leaves state courts considerable latitude…."  Jones, 359 F.3d at 1012.  "This is especially true when the allegations of bias do not relate to pecuniary interests or procedural infirmities[.]"  Id. at 1013.

16

In reviewing this claim, the Missouri Court of Appeals explained:

> We presume that a judge acts with honesty and integrity and will not preside at a trial in which the judge cannot be impartial. Worthington v. State, 166 S.W.3d 566, 579 (Mo. banc 2005). Unless there is an abuse of discretion, we defer to the trial court's determination of whether disqualification is required. Edwards v. State, 200 S.W.3d 500, 521 (Mo. banc 2006). Disqualification is required when a reasonable person has a factual basis to find an appearance of impropriety and thereby doubt the impartiality of the court. State v. Jones, 979 S.W.2d 171, 178 (Mo. banc 1998); see Rule 2.03(E)(1)(a), Canon 3. A disqualifying bias or prejudice must come from an "extrajudicial source that results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case." Jones, 979 S.W.2d at 178.

[ECF No. 18-5 at 11]  The court found that Petitioner "had not identified any factual basis or extrajudicial source that would give rise to the appearance of impropriety," and the mere fact that "the trial judge lived in the neighborhood where the crime took place does not by itself show bias." [Id. at 12]  Because Petitioner neither provided any reference to the record demonstrating bias nor cited relevant legal authority supporting his argument that living in close proximity to the location of the crime establishes judicial bias, the court held that the trial court did not abuse its discretion in denying the motion for recusal.  [Id.]

Here, Petitioner provides no support for his claim that the trial judge was impartial because he lived in the neighborhood where the crime occurred, and the Court's review of the record reveals no suggestions of bias on the part of the trial court.  Petitioner's is not "among the 'situations [that] have been identified in which experience teaches that the probability of actual bias on the part of the judge ... is too high to be constitutionally tolerable,' such as where the judge 'has a pecuniary interest in the outcome' or where 'he has been the target of personal abuse or criticism from the party before him.'"  Kinder, 272 F.3d at 540 (alterations in original) (quoting Withrow v. Larkin, 321 U.S. 35, 47 (1975)).  Consequently, the state court's findings were not

contrary to, or based on an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Furthermore, Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  See 28 U.S.C. § 2254(d)(2).  Petitioner's Ground Three is therefore denied.

3.   Grounds Four, Five, and Six:  Ineffective Assistance of Trial and Appellate Counsel

Petitioner asserts in Grounds Four and Six that he received ineffective assistance of trial counsel.  In Ground Five, Petitioner argues that appellate counsel was ineffective.  [ECF No. 1] Respondents counter that the state courts considered Petitioner's claims and reasonably denied relief.  [ECF No. 18]

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that:  (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687, 688 (1984).  "The first prong requires a showing 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  White v. Dingle, 757 F.3d 750, 752 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 687).  "The second prong requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. at 753 (quoting Strickland, 466 U.S. at 694).

"[W]hen reviewing an ineffective-assistance-of-counsel claim, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Woods v. Donald, 575 U.S. 312, 315 (2015) (quoting Strickland, 466 U.S. at 689). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all

the more difficult." Harrington, 562 U.S. at 105.  "The standards created by Strickland and §

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."

Id. (internal citations omitted).  It is not sufficient for a petitioner to "show that he would have

satisfied Strickland's test if his claim were being analyzed in the first instance." Bell v. Cone, 535

U.S. 685, 698-99 (2002).  "Rather, he must show that the [state court] applied Strickland to the

facts of his case in an objectively unreasonable manner."  Id. at 699.

    a.  Ground Four:  Ineffective Assistance of Trial Counsel – Inadequate Cross-
        Examination

In Ground Four, Petitioner claims his trial counsel provided ineffective assistance, in

violation of his Sixth Amendment rights, "because he failed to question state's witness Kathryn

Howard, the nurse who examined [A.A] at the hospital, about the condition of [A.A] when Nurse

Howard examined her[.]"  [ECF No. 1 at 10]  Petitioner asserts that Nurse Howard "could have

credibly testified that [A.A.'s] clothing was intact, absent stains, tears upon examination and that

[A.A.'s] neck and face were free of bru[i]sing."  [Id.]  Respondents counter that the state court

considered this claim of error in post-conviction relief proceedings and "reasonably determined

Nurse Howard's information was consistent with the descriptions given by [Petitioner's] victim."

[ECF No. 18 at 5]  Respondents assert that trial counsel therefore "did not breach a duty" and

"there was no resulting prejudice as required by Strickland v. Washington, 466 U.S. 668 (1984)."

[Id. at 5-6]

The record reflects that Nurse Howard testified that, on January 3, 2009, she treated and

examined A.A. and completed a "sexual assault evidence collection kit."  [ECF No. 18-1 at 381-

82]  Nurse Howard stated that, in addition to a vaginal injury, A.A. "had some abrasions and

tenderness on each of her hands."  [Id. at 388-89]  On cross-examination, Nurse Howard affirmed

that A.A. did not "complain of having trouble breathing," "there was no bruising in the pelvic

area," and the "only visible injury to the naked eye was on the hands … and genital area."  [Id at 392]  Like Nurse Howard, A.A. confirmed that "there were no physical injuries outside of [her] wrists."  [Id. at 322]

Petitioner presented his claim that trial counsel was ineffective for inadequately cross-examining Ms. Howard to the Rule 29.15 post-conviction motion court, which denied the claim. [ECF No. 21-2]  Petitioner appealed the denial of his motion for post-conviction relief to the Missouri Court of Appeals, which similarly denied the claim.  [ECF No. 18-9]  In its memorandum supplementing the order, the Court of Appeals explained:

> [A.A.] testified she suffered "no physical injuries outside of [her] wrists" as a result of the incident, and Nurse Howard testified the only physical injuries to [A.A] were abrasions and swelling on her hands and a tear on the [A.A.'s] vagina.  With respect to [A.A.'s] clothing, the evidence at trial only revealed there were stains [A.A.'s] pants, and the motion court did not clearly err in finding it did not necessarily follow from [A.A.'s] testimony that clothes other than [A.A.'s] pants would have sustained tears or additional stains.

[ECF No. 18-9 at 12]  The Court of Appeals concluded that, because Petitioner "alleged no facts showing he was prejudiced by trial's counsel's failure to cross-examine Nurse Howard regarding the condition of Victim's face, neck, and clothing," the motion court did not clearly err in denying Petitioner's claim that trial counsel was ineffective in failing to cross examine Nurse Howard.  [Id.]

The Court finds that the Missouri Court of Appeals properly applied Strickland and reasonably denied Petitioner's claim that trial counsel was ineffective for failing to question Ms. Howard about the condition of A.A.'s neck, face, and clothes because Petitioner did not demonstrate the requisite prejudice.  More specifically, Petitioner fails to establish that a more extensive cross-examination about A.A.'s condition would have changed the outcome of the trial, because both Ms. Howard and A.A. testified that Plaintiff's physical injuries were limited to her

vaginal area and/or hands and wrists.    Accordingly, the Court defers to the Court of Appeals'
decision on this issue and denies Petitioner's Ground Four.

       b.   Ground Six:  Ineffective Assistance of Trial Counsel – Improper Impeachment

In Ground Six, Petitioner claims that trial counsel was ineffective for improperly
impeaching A.A. [ECF No. 1 at 12]  In particular, Petitioner argues that "despite having a defense
strategy to admit the robbery but contest the sex crimes as consensual, trial counsel attempted to
impeach [A.A.] by arguing whether the forcible sodomy … was completed or merely attempted."
[Id.]  Petitioner maintains that counsel's efforts to impeach A.A. "did not affect [her] believability
and only served to diminish Petitioner's believability."  [Id.]  Respondents counter that there "is
no reasonable probability that the outcome of the trial would have been different" and "[t]he state
court's resolution of the claim was reasonable and should receive deference."  [ECF No. 18 at 9]

At trial, A.A. testified on direct examination that Petitioner attempted to penetrate her anus
with his penis but was "not able to get it all the way in."  [ECF No. 18-1 at 277]  On cross-
examination, trial counsel attempted to impeach A.A. with her deposition testimony, as follows:

> [Counsel]:  … I will just refer to the deposition, page 32, lines one and
> two referring to where the penis went.  And I said, okay, but not your
> butt.  And the answer was no.  And now you're saying he tried but
> couldn't?
>
> [A.A.]:  I said that then, too.
>
> [Counsel]:  Actually not at deposition.
>
> [A.A.]:  I did.
>
> [Counsel]:  Well, regardless….

[Id. at 321]

Petitioner raised this claim of error before the motion court, which denied Petitioner's Rule
29.15 motion. [ECF No. 21-2 at 59]  In affirming the denial, the Missouri Court of Appeals found

that Petitioner "admitted during his testimony that he told police he was erect and ejaculated inside of [A.A.'s] anus, and [Petitioner's] defense at trial was that [A.A.] requested and consented to having anal sex." [ECF No. 18-9 at 13-14]   The court concluded that, because Petitioner "alleged no facts showing he was prejudiced by trial counsel's unsuccessful attempted impeachment" of A.A., the motion court did not clearly err in denying his claim that counsel was ineffective for failing to adequately cross-examine her.  [Id.]

The Missouri Court of Appeals applied the proper standard for evaluating whether counsel was ineffective.   See Strickland, 466 U.S. at 687-88. To succeed under the Strickland ineffectiveness standard, a petitioner must show that counsel's conduct fell below reasonable professional standards and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Petitioner identifies, and the Court finds, nothing in the Missouri Court of Appeals' decision contrary to clearly-established federal law or based on an unreasonable determination of facts.  See 28 U.S.C. § 2254(d).  Accordingly, the Court defers to the Court of Appeals on this issue and denies Petitioner's Ground Six.

c.   Ground Five:  Ineffective Assistance of Appellate Counsel – Failure to Challenge the Sufficiency of Evidence

In Ground Five, Petitioner claims that his appellate counsel provided ineffective assistance "when he failed to appeal the sufficiency of the evidence to support the kidnapping conviction[.]" [ECF No. 1 at 11]  More specifically, Petitioner asserts that the alleged error constituted ineffective assistance of counsel because (1) "the evidence was insufficient as a matter of law to prove that Petitioner removed [A.A.] for the purpose of terrorizing her" and (2) "[t]here was insufficient evidence to prove Petition acted purposefully and the asportation of [A.A.] was other than incidental to the sexual assault and robbery."  [Id.]  Respondents counter that the Missouri Court

of Appeals "reasonably determined that Petitioner's ineffective assistance of counsel claim was meritless.  28 U.S.C. § 2254(d)."  [ECF No. 18 at 8]

The Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal.  See Evitts v. Lucey, 469 U.S. 387, 396-97 (1985); Douglas v. California, 371 U.S. 353, 357-58 (1963).  The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in Strickland.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Boliek v. Bowersox, 96 F.3d 1070, 1073 (8th Cir.1996).  Petitioner must therefore show that the appellate attorney's performance was below the reasonable standard of competence and that performance was prejudicial.  See Strickland, 466 U.S. at 687; Gee v. Groose, 110 F.3d 1346, 1352 (8th Cir. 1997).

"When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims."  Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006).  "This is because one of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal."  Gray v. Norman, 739 F.3d 1113, 1118 (8th Cir. 2014).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Smith, 528 U.S. at 288 (quotation omitted).  To establish that appellate counsel's performance was prejudicial, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable [conduct], he would have prevailed on his appeal."  Id. at 285.

As relevant here, the Missouri statute in effect in January 2009 provided:

> A person commits the crime of kidnapping if he or she unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of… (5) … terrorizing the victim ….

23

Mo. Rev. Stat. § 565.110.1 (2005).  "Under Missouri precedent, the offense of kidnapping can only be sustained where the movement or confinement of the victim is more than 'merely incidental' to another offense."   State v. Sistrunk, 414 S.W.3d 592, 600 (Mo. App. 2013). Determining whether the movement or confinement was merely incidental to another offense requires a court "to focus upon whether 'there was any increased risk of harm or danger to the victim from the movement or confinement that was not present as the result of the other offense.'" Id. (quoting State v. Williams, 860 S.W.2d 364, 366 (Mo. App. 1993)).

In his Rule 29.15 motion and subsequent appeal, Petitioner claimed that appellate counsel was ineffective in failing to appeal the kidnapping conviction because there was insufficient evidence from which a reasonable juror could have found that (1) Petitioner "unlawfully removed" A.A. (2) "for the purpose of terrorizing" her."  [ECF Nos. 18-6, 21-2]  The motion court determined that Petitioner did not demonstrate ineffective assistance of counsel because the evidence adduced at trial supported the kidnapping conviction.  [ECF No. 21-2]

In affirming the denial of Petitioner's post-conviction motion, the Missouri Court of Appeals found that Petitioner moved A.A. "away from the middle of [the street], where the street lights were on, to a location close to the small dark aisle in between buildings."  [ECF No. 18-9 at 16]  The court concluded that "[t]he movement and isolation of [A.A.] to these less visible areas decreased the chances of witnesses and the immediate capture of [Petitioner], creating a greater risk of harm to [A.A.]," and therefore was not incidental to his other offenses.   [Id. citing State v. Childs, 257, S.W.3d 655, 659-60 (Mo. App. 2008) (evidence that the defendant moved the victim to a more private location before forcibly raping her was not incidental to the rape)].

The Missouri Court of Appeals further found that there was sufficient evidence of Petitioner's purpose to terrorize A.A. to support the kidnapping conviction.  [ECF No. 18-9 at 17]

For example, A.A. testified that "after [Petitioner] moved her to one of the less visible areas and she struggled, [Petitioner] put his hands around her throat and squeezed it so she could not breathe, and [A.A.] stopped fighting because she was afraid she was going to die."  [Id.]  A.A. also testified that, when Petitioner was assaulting her, he told her he "would fuck [her] up if [she] called the police."  [Id.]  The court held that "[r]emoving a person from the place she was found and then threatening a loss of life or physical injury is sufficient to demonstrate purpose to terrorize under section 565.110.1(5)."  [Id. citing State v. Leonard, 490 S.W.3d 730, 737-38 (Mo. App. 2016) ("Confining someone while simultaneously threatening a loss of life or physical injury is sufficient to demonstrate a purpose to terrorize.")].

After determining that a reasonable juror could have found that Petitioner unlawfully removed A.A. for the purpose of terrorizing her, the Missouri Court of Appeals concluded that "a claim that there was insufficient evidence to support his kidnapping conviction would not have required reversal had appellate counsel raised it on appeal."  [ECF No. 18-9 at 17]  As a result, Petitioner could not establish he was prejudiced by appellate counsel's alleged error and the motion court did not clearly err in denying Petitioner's claim of ineffective assistance of appellate counsel without an evidentiary hearing.  [Id. at 17-18]

Here, Petitioner does not support his challenge to appellate counsel's performance with evidence that "counsel's winnowing process was performed incompetently."  See, e.g., Smith v. Buckner, No. 1:18-CV-220 RLW, 2021 WL 876906, at *8-9 (E.D. Mo. Mar. 9, 2021).  In addition, the Missouri Court of Appeals' conclusion that the evidence was sufficient to support Petitioner's kidnapping conviction is entitled to great deference.  See Jackson v. Virginia, 443 U.S. 307, 323 (1979).  "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will

be a rare case in which a federal court on habeas will disagree with them." Murphy v. Strange, No. 1:18-CV-30 RLW, 2020 WL 6318070, at *8 (E.D. Mo. Oct. 28, 2020) (quoting Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989)).

Upon review of the entire record, the Court concludes that the Missouri Court of Appeals' determination that appellate counsel did not provide ineffective assistance in failing to pursue on direct appeal a challenge to the sufficiency of the evidence supporting Petitioner's kidnapping conviction was not contrary to or an unreasonable application of clearly established federal law. Nor was the Court of Appeals' decision based on an unreasonable determination of the facts in light of the evidence. The Court denies Ground Five.

## IV. Evidentiary Hearing

Petitioner, without citation to authority or argument in support of his request, also requests an evidentiary hearing. Petitioner states he did not have an evidentiary hearing during his post-conviction motion proceeding. Respondents did not address this request.

The relevant statute, 28 U.S.C. § 2254(e)(2), bars an evidentiary hearing unless a habeas petitioner was unable to develop the factual basis of his claim in state court despite diligent effort or establishes statutory exceptions to that requirement. See Williams, 529 U.S. at 432 (a petitioner must show diligent effort for not developing his claim in state court). The statutory exceptions do not apply here. Petitioner has not addressed the diligence requirement, and he has not established how he could further develop the factual basis of his ineffective assistance of counsel claim. Therefore, Petitioner has not demonstrated entitlement to an evidentiary hearing under Section 2254(e)(2).

Even assuming the Court may consider the granting of an evidentiary hearing in this case, the Court must take into consideration the AEDPA's deferential standards that "control whether

to grant habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). More specifically, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Id.</u> at 474. The federal habeas court must also take into account "the deferential standards" under the AEDPA that "control whether to grant habeas relief." <u>Id.</u> A habeas court need not hold an evidentiary hearing "if the record refutes the factual allegations[,] otherwise precludes habeas relief," or allows resolution of the issues by reference to the state court record. <u>Id.</u>

The AEDPA requires the Court to limit its review of the merits of Petitioner's ground for relief to the record that was before the state court adjudicating the claim on its merits. <u>See Cullen v. Pinholster</u>, 563 U.S. 170, 181-82 (2011). In addressing the merits of Petitioner's ineffective assistance of counsel claim in Petitioner's post-conviction appeal, the Court of Appeals had before it the trial transcript and the record on appeal for Petitioner's direct appeal, as well as the legal file for Petitioner's post-conviction appeal. That state court record is available to this Court as part of the record in this proceeding. Because the state court record allows resolution of the merits of Petitioner's ineffective assistance of appellate counsel claim, the Court denies Petitioner's request for an evidentiary hearing. <u>See Crawford v. Norris</u>, 363 Fed. Appx. 428 (8th Cir. 2010) (unpublished per curiam opinion) (affirming district court's decision not to hold an evidentiary hearing in a habeas case in which the state post-conviction motion court had not held a hearing).

## V.   Certificate of Appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a

constitutional right."  Tennard v. Dretke, 542 U.S. 274, 282 (2004); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the ... court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); accord Miller-El, 537 U.S. at 338 (quoting Slack, 529 U.S. at 484).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right.  Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's petition.

**V.   Conclusion**

After careful consideration,

**IT IS HEREBY ORDERED** that Eric Schmitt, Attorney General of the State of Missouri, is **ADDED** as a Respondent.

**IT IS FURTHER ORDERED** that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FINALLY ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED.**

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of July, 2021

28